**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:

| | | |
|---|---|---|
| **NATIONAL MEDICAL IMAGING, LLC , et al.** | : | **Chapter 11** |
| | : | |
| **Debtor** | : | **Bky. No. 20-12618  ELF** |
| | : | |
| | : | **(Jointly Administered)** |
| _____ | : | |
| | : | |
| **NATIONAL MEDICAL IMAGING, LLC** | : | |
| | : | **Adv. 20-0219** |
| **NATIONAL MEDICAL IMAGING** | : | |
| **HOLDING COMPANY, LLC,** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **U.S. BANK, NATIONAL ASSOCIATION,** | : | |
| | : | |
| **Defendant** | : | |

# M E M O R A N D U M

**I.  INTRODUCTION**

**II.  BACKGROUND**

      **A.  Preamble**

      **B.  Factual Background**

          **1. the involuntary bankruptcy cases**

          **2.  the history of the §303(i) litigation**

          **3. the Pennsylvania judgment and execution proceedings in the Fla. Trial Court**

          **4.  the fraudulent transfer proceeding in the Fla. Trial Court**

-1-

**III.  SUBJECT MATTER JURISDICTION**

    **A.  Legal Standard**: Fed. R. Civ. P. 12(b)(1)

    **B.  <u>Rooker-Feldman</u>: General Principles**

    **C.  The Fla. Order**

    **D.  Discussion**


**IV.  REQUEST FOR DISMISSAL ON THE MERITS: PRECLUSION**

    **A.  Issue Preclusion: Based on the Fla. Order - First, Second and Third Claims**

        **1.  full faith and credit**

        **2.  issue preclusion under Florida law**

        **3.  discussion**


    **B.  Claim Preclusion: Based on the District Court Opinion - First and Second Claims**

        **1. introduction**

        **2. the District Court Opinion and Court of Appeals' affirmance**

        **3.  federal claim preclusion: legal principles**

        **4. categorizing/characterizing the Debtors' claims for relief**

        **5. discussion: claims related to bankruptcy case administration**

        **6. claims seeking a determination of the validity, priority or extent of U.S. Bank's secured status in the bankruptcy case**

        **7. claims seeking denial of U.S. Bank setoff or execution rights**


    **C.  Issue Preclusion: Based on the District Court Opinion - Third Claim**

        **1.  federal issue preclusion: legal principles**

**2. equitable subordination under 11 U.S.C. §510(c): legal principles**

**3. discussion**


**V.  OTHER GROUNDS ASSERTED FOR DISMISSAL OF THE FIRST AND
SECOND CLAIMS**

    **A.  Introduction**

        **1. distinguishing the two (2) remaining claims for relief**

        **2. discussion re: setoff issue**

        **3. discussion re: judgment execution issue**

**VI. REQUEST FOR DISMISSAL OF SECOND CLAIM: JOINDER OF NECESSARY
PARTY**


**VII. CONCLUSION**

## I. INTRODUCTION

On June 20, 2020,  National Medical Imaging, LLC ("NMI") and National Medical

Imaging Holding Company ("NMI Holding"), (collectively, "the Debtors"), filed voluntary

petitions under chapter 11 of the Bankruptcy Code.  The cases are being jointly administered.

A significant and singular aspect of these bankruptcy cases is that the Debtors' sole assets

are its claims against U.S. Bank National Association ("U.S. Bank") under 11 U.S.C. §303(i)(1)

and (2).  These claims arise from the filing and subsequent dismissal of an involuntary

bankruptcy petition that was filed in this court in 2009.

On July 20, 2020, the Debtors commenced this adversary proceeding by filing a

Complaint against Defendant U.S. Bank.

In the Complaint, the Debtors assert the following claims:

> **First Claim:** for declaratory relief to determine the effect of the parties'
> competing claims against each other generally (e.g, whether the claims are subject
> to setoff or the Debtors' claims are subject to judgment execution by U.S. Bank),
> and in the context of a future chapter 11 plan distribution to creditors;

> **Second Claim:** framed as a request for the determination of the extent, priority
> and validity of U.S. Bank's asserted liens against the Debtors' assets, liens that
> the Debtors dispute, but in reality, a request that U.S. Bank's lien on the Debtors'
> assets be invalidated based on bankruptcy policy underlying 11 U.S.C. §303(i);
> and

> **Third Claim:** for equitable subordination of U.S. Bank's allowed claim in
> connection with the anticipated distribution to creditors in this bankruptcy case.

On August 24, 2020, U.S. Bank filed a motion to dismiss the Debtors' Complaint ("the

Motion").

U.S. Bank's asserted grounds for dismissal fall into three (3) procedural categories:

1.  lack of subject matter jurisdiction, <u>see</u> Fed. R. Civ. P. 12(b)(1);

2.  failure to state a claim, <u>see</u> Fed. R. Civ. P. 12(b)(6); and

-4-

3.  failure to join an indispensable party, Fed. R. Civ. P. 12(b)(7).[2]

In connection with the Motion, U.S. Bank raises a host of arguments, most notably: the

Rooker-Feldman doctrine, claim preclusion, issue preclusion and the federal Anti-Injunction

Act, 22 U.S.C. §2283.

The parties completed their briefing of the issues on October 29, 2020 and the matter is

ready for decision.[3]

For the reasons stated below, the Motion will be granted in part and denied in part with

respect to the First Claim, denied with respect to the Second Claim. and granted with respect to

the Third Claim.

All of the dismissed claims in the First Claim are dismissed without prejudice. The Third

Claim is dismissed on the merits.


## II.  BACKGROUND

### A.  Preamble

Before dipping my toe (metaphorically speaking) into the background of the present

adversary proceeding, a couple of observations are in order.

The disputes giving rise to this adversary proceeding emanate from a commercial

relationship that ended in November 2009, when the Debtors ceased their business activities.

(See Complaint ¶ 85); see also National Medical Imaging, LLC v. U.S. Bank N.A., 2019 WL

---

[2]      Fed. R. Civ. P. 12 is incorporated by reference by Fed. R. Bankr. P. 7012 and therefore
all three (3) subsections cited in the text are applicable in this adversary proceeding.

[3]      The court has jurisdiction over this adversary proceeding under 28 U.S.C. §1334(b). Both
parties agree that this a core proceeding, see 28 U.S.C. §157(b)(2).  Both parties have  expressly
consented to the entry of a final judgment by the bankruptcy court. See Fed. R. Bankr. P. 7008, 7012(b).

4076768, at *3 (E.D. Pa. Aug. 28, 2019), aff'd on rehearing, 818 Fed. App'x. 129 (3d Cir. 2020).

(The district court decision just cited is pivotal in resolving the present Motion; I will refer to it

in this Memorandum as "the District Court Opinion" and the court that issued that decision as

"the District Court").

Since 2009, the volume of litigation between the parties is truly epic, and considering the

length of time that has already passed and the potential for ongoing litigation, a comparison to

the iconic, fictional case of Jarndyce v. Jarndyce comes to mind.[4]

In 2016, in an appeal in the Third Circuit, the court described the dispute before it as:

> but one fragment of more than a decade of ongoing litigation between Maury
> Rosenberg and his medical imaging centers on the one side and U.S. Bank and its
> affiliated entities on the other. By our estimate, that litigation has produced 27 written
> opinions at almost every level of the federal judiciary.

Rosenberg v. DVI Receivables XVII, LLC, 835 F.3d 414, 416 (3d Cir. 2016).

The Third Circuit's observation requires supplementation.

In addition to their clashes in federal courts, Rosenberg/the Rosenberg entities and U.S.

Bank also have litigated disputes in the Pennsylvania and Florida state courts.   And, since the

Third Circuit's 2016 commentary, the parties have conducted additional litigation in several

federal courts, including this bankruptcy court, the District Court and the  Third Circuit.  Soon,

we can expect at least some U.S. Supreme Court involvement as well.[5]

---

[4]    Jarndyce v Jarndyce is a fictional case that threatened "to go on forever." Scales v.
United States, 79 S. Ct. 1444, 1446 (1959) (citing C. Dickens, Bleak House), amended, 80 S. Ct. 858
(1960).

[5]    After the commencement of the Debtors' bankruptcy cases, after an adverse ruling in the
Third Circuit (on an affirmative claim of the Debtors, not subject to the automatic stay), and with this
court's authorization, the Debtors retained special counsel to assist in the preparation of a petition to the
U.S. Supreme Court for a writ of certiorari.  The Debtors report that they filed the cert. petition of
February 19, 2021.  (See Bky. No. 20-2618, Doc. # 165).

(continued...)

This Memorandum will not attempt to provide a comprehensive, encyclopedic review of this litigation history.  However, it is necessary to delve into some of this litigation history because U.S. Bank raises jurisdictional and finality arguments that are based on certain prior court rulings.

Of the numerous rulings, the two (2)  most important for present purposes (and the ones that will be scrutinized later in this Memorandum) are:

(1) the District Court Opinion; and

(2) <u>Lyon Financial Services, Inc. v. Nat'l Med. Imaging, LLC</u>, No. 2015-023495-CA-01 (Corrected Order dated April 28, 2020) ("the Fla. Order"), <u>appeal pending</u>,  No. 3D 20-0730 (Fla. Ct. App., 3rd Dist.).[6]

## B.  Factual Background

### 1. the involuntary bankruptcy cases

Debtor NMI was a diagnostic imaging company headquartered in Philadelphia,

---

[5](...continued)

If the cert. petition is granted and if the appeal of the Third Circuit's ruling is reversed, the likely consequence is a remand for a trial in the District Court, after which there is the potential for another round of appeals. Thus, like <u>Jarndyce</u>, it is possible that the lengthy legal struggle between the parties could continue for years.

[6]    In the full caption of the case, Lyon Financial Services, Inc. is described as "d/b/a U.S. Bank Portfolio Services and as agent for U.S. Bank N.A., as Trustee or Collateral Agent."  There is no dispute that Lyon Financial Services, Inc. was U.S. Bank's predecessor-in-interest.

Also, the Fla. Order is a bit of a misnomer.  It was more than an Order.  It was an 18 page "speaking order" that reads like a memorandum opinion.

The Fla. Order is most easily located by accessing Exhibit 22 of U.S. Bank's Request for Judicial Notice ("RJN"), available on the docket of the adversary proceeding. (Doc. # 6).

Pennsylvania that provided management, billing, and collection services for diagnostic imaging

centers.  NMI was affiliated with certain limited partnerships (the "NMI LP's") that operated the

diagnostic imaging centers.  Debtor NMI Holding is NMI's wholly owned subsidiary.

The Rosenberg Trust holds a 99% membership interest in NMI.  Maury Rosenberg

("Rosenberg") is the controlling member of NMI. (Complaint ¶¶ 21-22).[7]

The underlying commercial transaction that is the genesis of the parties' litigation was

described in the District Court Opinion as follows:

> In 2000, the NMI LPs entered into various master leases and equipment schedules
> ("Master Leases") with DVI Financial Services to finance the purchase of equipment
> for use at the centers. These Master Leases were secured by a limited guaranty
> executed by Maury Rosenberg, the managing member of NMI, and an additional
> guaranty by NMI.
>
> DVI Financial then transferred some of the Master Leases to DVI Funding, LLC,
> which held them directly, and the remainder were securitized and assigned to the DVI
> Receivables corporations. At the same time, DVI Funding entered into indentures
> with U.S. Bank, acting as trustee of the transaction, under which notes were issued to
> investors with the Master Leases serving as collateral. DVI Financial was appointed
> as servicer for the trustee, U.S. Bank, but after filing for bankruptcy in 2003, DVI
> Financial transferred its rights as servicer to Lyon Financial Services, a subsidiary of
> U.S. Bank.

2019 WL 4076768, at *1.

In 2003, U.S. Bank declared the Master Leases in default and instituted litigation against

---

[7]      As the matter comes before the court on a motion to dismiss filed pursuant to, inter alia,
Fed. R. Civ. P. 12(b)(6), (for a more complete discussion of the legal standards governing the Motion, see
Part III, infra), it is appropriate to look to the factual allegations in the Complaint.

For purposes of deciding the Motion, however, it is not necessary to recite in detail the 66
paragraphs in the Complaint that describe the events leading up to the involuntary bankruptcy cases that
were dismissed and that give rise to the present litigation.  Consequently, I have abbreviated the detailed
factual recitation in the Complaint.  In doing so, I have relied, in part, on the factual recitations in the
District Court Opinion and in an earlier decision by the bankruptcy court issued by a predecessor judge,
In re Nat'l Med. Imaging, Inc., 439 B.R. 837 (Bankr. E.D. Pa. 2009) (per Fehling, J.), aff'd sub nom. DVI
Receivables v. XIV, LLC v. Nat'l Med. Imaging, LLC, 529 B.R. 607 (Bankr. E.D. Pa. 2015), aff'd sub
nom. Nat'l Med. Imaging, LLC v. Ashland Funding LLC, 648 F. App'x 251 (3d Cir. 2016).

NMI in the Pennsylvania state courts.  Meanwhile, several DVI entities filed an involuntary bankruptcy petition against the Debtors.  The parties eventually  reached a settlement in August 2005 in which the involuntary petitions were dismissed, the repayment obligations under the leases were restructured and the Debtors and Rosenberg provided new guaranties. (See Complaint ¶ 29); see also Nat'l Med. Imaging, Inc., 439 B.R. at 843.

On July 31, 2008,  based on an asserted default under the August 2005 settlement agreement, U.S. Bank filed  confessions of judgment against the Debtors and Rosenberg in the Court of Common Pleas,  Bucks County,  PA ("the C.P. Court.").  (Complaint ¶ 43). The Debtors responded by filing petitions to open judgment, after which the C.P Court stayed execution and set up a discovery schedule.  (Complaint ¶¶ 45, 48).

On November 7, 2008, despite having no remaining interest in the Master Leases, DVI Funding and five other DVI entities filed involuntary bankruptcy petitions against NMI and Rosenberg in this court.  The Debtors allege the involuntary petitions were filed without conducting "any real due diligence."  (Complaint ¶67).  They further allege that the filing of the involuntary petitions by the DVI entities was engineered by U.S. Bank and was motivated by two (2) concerns:

1.  to expedite its collection efforts (that were stayed by the state court); and

2.  to pressure the Rosenberg Trust (which was not liable on the underlying debt, but which U.S. Bank believed to be a "deep pocket") to fund a settlement.

(Complaint ¶¶50-55, 70-72).[8]

---

[8]     Throughout its litigation with U.S. Bank, the Debtors have referred repeatedly what they seem to consider to be a "smoking gun."  They call it  "the Out File" e-mail.

The Out File e-mail was sent by Jane Fox, a U.S. Bank representative, to Robert Brier, one (1) of its lawyers.  Fox sent the e-mail after the C.P Court. stayed execution on the Pennsylvania

(continued...)

The involuntary petition against Rosenberg was transferred to the Southern District of Florida and was subsequently dismissed by the bankruptcy court.  See In re Rosenberg, 414 B.R. 826 (Bankr. S.D. Fla. 2009), aff'd, 472 F. App'x 890 (11th Cir. 2012).

On December 28, 2009, this court also dismissed the involuntary petitions, relying on the dismissal of the Rosenberg involuntary petition by the Florida bankruptcy court and applying the doctrine of issue preclusion.  Nat'l Med. Imaging, Inc., 439 B.R. at 853.  That decision was affirmed on appeal.  See n.7, supra.

### 2. the history of the §303(i) litigation

11 U.S.C. §303(i) provides:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—
>
> (1) against the petitioners and in favor of the debtor for—
>
>   (A) costs; or
>
>   (B) a reasonable attorney's fee; or
>
> (2) against any petitioner that filed the petition in bad faith, for—
>
>   (A) any damages proximately caused by such filing; or

---

[8](...continued)
confessed judgments.

In the e-mail, Fox, questioned whether Michael McCaney, the attorney who had filed the Pennsylvania confessed judgments was "the right attorney to be working these accounts."  Fox requested that Brier "make sure that Michael is a 'street fighter.'"  She expressed concerns because she "ha[d] not gotten the impression that Michael understands he needs to **out file** [Maury Rosenberg] and not sit back and let things just go through the court systems." (emphasis added).  Fox claimed this was necessary because Brier had told her that "Maurey [sic] … does not conduct business above the table and is know [sic] to due [sic] business i[n] rough areas" and "will pull out all legal and questionable tactics . . . ."  (See Complaint, Ex. A).

(B) punitive damages.

On May 27, 2014, Plaintiffs brought claims for attorneys' fees and costs under §303(i)(1) and Bankruptcy Rule 9011 through two (2) adversary proceedings in this court.  (See Adv. Nos. 14-250, 14-251).[9]  On May 14, 2015, the Debtors amended their Complaints to add a claim for damages (both compensatory and punitive) under §303(i)(2).[10]

On September 16, 2016, the District Court withdrew the reference of the §303(i)(2) claim (but not the §303(i)(1) claim).  See District Court Opinion, 2019 WL 4076768, at *3 n.16.

The parties and the prior bankruptcy judge then assigned to the §303(i)(1) adversary proceeding that remained in the bankruptcy court appear to have agreed to leave that adversary proceeding in suspense pending the outcome of the §303(i)(2) litigation in the District Court. Those claims remain pending in this court.

On August 28, 2019, the District Court entered summary judgment in favor of U.S. Bank on the Debtors' §303(i)(2) claims.  See District Court Opinion.  (I will defer my discussion of the content of  the District Court's ruling until I reach the parties' legal arguments).

The Debtors appealed the District Court's decision to the Third Circuit.

On August 28, 2020, after the Court of Appeals panel had initially affirmed the District Court but then granted rehearing, the panel again affirmed the decision of the District Court. Nat'l Med. Imaging,  818 F. App'x at 129.

---

[9]      Both Debtors are plaintiffs in each adversary proceeding.  It appears that two (2) complaints were filed because there were two (2), separate involuntary bankruptcy cases.

[10]      Initially, the Debtors brought their §303(i)(1) claim in this court and a §303(i)(2) claim in the District Court.  However, the District Court dismissed the §303(i)(2) claim, holding that § 303(i)(2) does not create an independent cause of action that may be brought directly in the district court.  See District Court Opinion, 2019 WL 4076768, at *3 n.16.  As explained in the text, the District Court ended up with the case by withdrawing the reference from the bankruptcy court.

### 3. the Pennsylvania judgment and execution proceedings in the Fla. Trial Court

On November 22, 2011, the C.P Court opened U.S. Bank's July 31, 2008 confessed

judgment against the Debtors. (Compl. ¶ 89; RJN, Ex. 1).  On May 27, 2015, long after the

dismissal of the involuntary cases, a final judgment in the amount of $12 million was entered by

agreement in the C.P Court in favor of U.S. Bank and against the Debtors. (RJN, Ex. 6).  Later in

2015, U.S. Bank transferred the Pennsylvania money judgment to Florida's 11th Circuit Court,

Dade County ("the Fla. Trial Court").  (Complaint ¶ 89; RJN, Ex. 11).

On December 4, 2019, U.S. Bank initiated a supplementary proceeding in the Fla. Trial

Court in the form of a  motion ("the Sale Motion"), seeking authority to execute on its

transferred judgment, against what it termed a "chose in action," specifically, the Debtors'

pending §303(i)(2) claim.  (When U.S. Bank commenced this  supplementary proceeding, the

District Court in the E.D. Pa. had decided the §303(i)(2) claim  in its favor and the Debtors'

appeal was pending in the Third Circuit).  (RJN, Ex. 20).  The Debtors opposed the Sale Motion

in the Fla. Trial Court.

On April 28, 2020, the Fla. Trial Court granted the Sale Motion and entered the Fla.

Order.  (I again will defer further discussion of this significant ruling until I reach the parties'

legal arguments).

The Debtors appealed the Fla. Order, but their efforts to obtain a stay pending appeal was

denied by the Fla. Trial Court and the Florida District Court of Appeal.  (RJN, Ex.'s 24, 26).[11]

---

[11]     The Debtors also requested that the Third Circuit stay the sale. (When the Debtors made that request the Third Circuit had the appeal of the District Court Opinion under advisement).  After the Third Circuit panel issued its initial ruling (later vacated, but ultimately affirmed after rehearing), the panel denied the Debtors' request for injunctive relief as moot.  See Nat'l Med. Imaging, LLC v. U.S. Bank, No. 19-3255 (3d Cir.) (Doc. #'s 59, 74).  (Query whether the injunction request was truly moot considering that the District Court judgment, affirmed by the Third Circuit, was still subject to

(continued...)

The sale of the Debtors' §303(i)(1) claim, scheduled for June 15, 2020, (Complaint ¶ 93), was

stayed by the Debtors' June 12, 2020 bankruptcy filing.

### 4.  the fraudulent transfer proceeding in the Fla. Trial Court

One last piece of litigation warrants mention (as I will refer to it briefly later, see n.18,

infra.).

In November 2019, in another supplementary proceeding filed in the Fla. Trial Court

based on the transferred Pennsylvania money judgment, U.S. Bank filed a complaint seeking to

set aside an alleged fraudulent transfer ("the Fraudulent Transfer Complaint") (RJN, Ex. 17).

In the Fraudulent Transfer Complaint, U.S. Bank alleged that in April 2013, NMI

assigned its rights to the proceeds of the §303(i) claims to the Rosenberg Trust, that the transfer

was avoidable as an fraudulent transfer and that a UCC lien recorded to perfect the transfer is

invalid.  The Debtors filed a motion to dismiss the Fraudulent Transfer Complaint.  (RJN, Ex.

18).  That motion was granted in part and denied in part in an order in which the Fla. Trial Court

directed the Debtors to file an answer to the complaint.  (RJN, Ex. 19).

### III.  SUBJECT MATTER JURISDICTION

A federal bankruptcy court, as a court of limited jurisdiction, has a duty to assure itself

that it has subject matter jurisdiction before reaching the merits of a case.[12]  The prohibition

---

[11](...continued)
modification or reversal on further appeal).

[12]    . See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); In re
Mullarkey, 536 F.3d 215, 220–21 (3d Cir. 2008);. Hubi v. Nalty, 2011 WL 2292808, *1 (E.D. Pa. June 8,
(continued...)

against reaching the merits in the absence of jurisdiction precludes dismissal based on res judicata (or any other grounds for a merits dismissal raised by U.S. Bank) if the court lacks jurisdiction.  See Park Ins. Agency, Inc. v. Nat'l Grange Mut. Ins. Co., 1990 WL 18685, at *1 (E.D. Pa. Feb. 26, 1990).

In seeking dismissal of the Complaint, U.S. Bank raises an issue that goes to this court's subject matter jurisdiction, specifically, that this court lacks jurisdiction to grant relief on all three (3) claims in the Complaint based on the Rooker-Feldman doctrine.  I consider that argument first.


### A.  Legal Standard: Fed. R. Civ. P. 12(b)(1)

U.S. Bank's request for dismissal for lack of jurisdiction is brought under Fed. R. Civ. P. 12(b)(1).

Courts evaluate a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction by first determining whether the party is making a "facial" or "factual" jurisdictional attack on the plaintiff's complaint.  In re Horizon Healthcare Servs. Inc. Data Breach Litig., 846 F.3d 625, 632 (3d Cir. 2017); Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).

A "facial" attack is limited to the parties' pleadings.  If the jurisdictional challenge is based on information found in the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents, the court will make its ruling based upon those documents.  The court will accept all  allegations in the complaint as true and draw

---

[12](...continued)
2011); In re Olick, 2010 WL 4509828, at *1 n. 5 (Bankr. E.D. Pa. Nov. 9, 2010) (collecting cases); In re Shuman, 277 B.R. 638, 654 n. 8 (Bankr. E.D. Pa.2001).

all inferences from the allegations in favor of the plaintiff.  E.g., Hartig Drug Co. Inc. v. Senju

Pharm. Co., 836 F.3d 261, 268 (3d Cir. 2016); Spring Pharm., LLC v. Retrophin, Inc., 2019 WL

6769988, at *11 (E.D. Pa. Dec. 11, 2019) .

In contrast, a "factual" attack is evaluated by looking beyond the pleadings at affidavits

and other evidence submitted by the parties.  Davis, 824 F.3d at 346.

Here, the Complaint references the Fla. Order on which U.S. Bank bases its Rooker-

Feldman argument and U.S. Bank has provided the court with a copy of the Fla. Order.  While

this supplements the Complaint, the Fla. Order is a matter of public record and there is no

dispute as to its authenticity. Thus, U.S. Bank's jurisdictional attack is a facial in nature.  Accord

Aggie v. Pa. Dep't of Human Servs., 2015 WL 8007570, at *5 (E.D. Pa. Dec. 7, 2015).


## B.  Rooker-Feldman: General Principles

Bankruptcy court jurisdiction is governed by 28 U.S.C. §1334(b).  The statute grants the

district court (and by reference, the bankruptcy court, see 28 U.S.C. §157(b)), jurisdiction over

civil proceedings (1) arising under the Bankruptcy Code, or (2) arising in or related to a

bankruptcy case.

U.S. Bank does not question, as a threshold matter, that this court has §1334(b)

jurisdiction over the claims in the Complaint.[13]  However, U.S. Bank invokes the Rooker-

---

[13]    Exercising my independent duty to assure that the court has jurisdiction, I agree that, as a
threshold matter, jurisdiction exists under 28 U.S.C. §1334(b).  The claims raised in the Complaint are
either core matters under 28 U.S.C. §157(b) or are related to the Debtors' bankruptcy cases under the
standard enunciated by the Third Circuit in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984), ("An
action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or
freedom of action (either positively or negatively) and which in any way impacts upon the handling and
administration of the bankrupt estate),  overruled on other grounds by Things Remembered, Inc. v.
Petrarca, 516 U.S. 124 (1995).

Feldman doctrine which, when applicable, serves to divest the bankruptcy court of jurisdiction

that it might otherwise have exercised under 28 U.S.C. §1334(b).  See In re Knapper, 407 F.3d

573, 580 (3d Cir. 2005);  In re Razzi, 533 B.R. 469, 478 (Bankr. E.D. Pa. 2015) (same).

The Rooker–Feldman doctrine derives from two (2) Supreme Court cases, Rooker v.

Fidelity Trust Co., 263 U.S. 413, 415–16 (1923), and District of Columbia Court of Appeals v.

Feldman, 460 U.S. 462, 476 (1983).

The doctrine is rooted in the statutory dictate that federal district courts are courts of

original, not appellate, jurisdiction and that the United States Supreme Court is the only federal

court possessing jurisdiction to review final judgments of a state's highest court. See 28 U.S.C.

§1257(a); Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292 (2005). However,

Rooker–Feldman is considered a "narrow" doctrine, limited to "cases brought by state-court

losers complaining of injuries caused by state-court judgments rendered before the [federal]

court proceedings commenced and inviting [federal] court review and rejection of those

judgments." Exxon Mobil, 544 U.S. at 284. Only when these elements are present will

Rooker–Feldman divests a lower federal court of subject matter jurisdiction that otherwise

exists.

In Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d

Cir. 2010), the Court of Appeals enunciated the following four-part test for determining whether

a claim is subject to dismissal under the Rooker–Feldman doctrine:

> (1) the federal plaintiff lost in state court;
>
> (2) the federal plaintiff complains of injuries caused by the state-court judgment;
>
> (3) the judgment was rendered before the federal suit was filed; and,
>
> (4) the federal plaintiff is inviting the federal court to review and reject the state court

judgment.

The Rooker-Feldman and res judicata[14] doctrines often are difficult to distinguish from

one another because both doctrines "govern the deference that one court owes to an earlier

judgment."  Razzi, 533 B.R. at 473 (quoting Pesek v. Witscheber, 132 F.3d 36 (Table) at *3 (7th

Cir.1997) (nonprecedential)).  While closely related, the two (2) doctrines differ in material

ways:

- whereas res judicata is largely a matter of common law and involves the impropriety of permitting parties to have "two bites at the apple," Rooker–Feldman is based squarely on federal law and is concerned with federalism and the proper delineation of the power of the lower federal courts;

- unlike res judicata, Rooker–Feldman is not dependent on a final judgment on the merits;

- unlike res judicata, Rooker–Feldman contains no requirement that the precluded party had a full and fair opportunity to pursue its claim in the prior state-court proceeding; and

- res judicata is an affirmative defense and can be waived, while Rooker–Feldman deprives the federal court of subject matter jurisdiction and cannot be waived.

Razzi, 533 B.R. at 475-76.

The Third Circuit has provided useful guidelines that assist in distinguishing between

Rooker-Feldman and res judicata.

Rooker-Feldman "differs from mere attempts to litigate in federal court a matter

previously litigated in state court," in which instance "the federal court has jurisdiction as long

as the federal plaintiff presents some independent claim, even if that claim denies a legal

conclusion reached by the state court." In re Phila. Ent. & Dev. Partners, 879 F.3d 492, 500 (3d

---

[14]      In this context, I use the term res judicata in its broadest sense, where it refers to both claim and issue preclusion.  See Venuto v. Witco Corp., 117 F.3d 754, 758 (3d Cir. 1997).  Going forward in this Memorandum, I will use the modern terms "claim preclusion" and "issue preclusion" when referring to each specific doctrine and "res judicata" when referring to both doctrines collectively.

Cir. 2018) (internal citations and quotation marks omitted).  In other words, "[w]hen the second

court tries a matter anew and reaches a conclusion contrary to a judgment by the first court,

without concerning itself with the bona fides of the prior judgment, the second, or federal, court

is not conducting appellate review, regardless of whether compliance with the second judgment

would make it impossible to comply with the first judgment." Great Western, 615 F.3d at 169

(internal quotations and citations omitted).


### C.  The Fla. Order

As stated earlier, on December 4, 2019, U.S. Bank filed the Sale Motion in the Fla. Trial

Court seeking authority to execute against the Debtors' §303(i)(2) claim then pending in the U.S.

District Court in this district. The Debtors opposed the Sale Motion.

In their response to the Sale Motion, the Debtors made the following arguments:

1.  the court lacked subject matter jurisdiction;

2.  even if jurisdiction existed, the court should exercise its equitable discretion
    to deny the sale request because permitting execution against a claim pending
    in federal district court in Pennsylvania would usurp the jurisdiction of the
    federal courts;

3.  permitting a party to execute on a chose in action "against itself" violates
    Florida public policy.

(RJN, Ex. 21).

The Fla. Trial Court rejected all of the Debtors' arguments and granted the Sale Motion.

The Fla. Trial Court rejected the Debtors' jurisdictional argument.  The court declined

the Debtors' request that it hold categorically that choses in action cannot be subject to execution

under Florida law; in doing so, the court relied on a textual construction of the applicable statute

governing execution, Fla. Stat. § 56.29(6) and a negative implication drawn from the Florida

statutes that provide exemptions from execution  for various types of property.

The Fla. Trial Court further reasoned that it may well have equitable discretion to refuse

to permit a judgment creditor to execute on a chose in action against itself, but the court chose

not to exercise that discretion, finding nothing inherently "inequitable" or "unfair" generally,

about a judgment creditor executing on a chose of action against itself, or specifically on the

facts of the case before it.

### D.  Discussion

The Rooker-Feldman doctrine does not apply in this adversary proceeding because the

fourth prong of the Great Western test for Rooker-Feldman is not satisfied.  The Debtors here are

not requesting that this court review and reject the Fla. Order.[15]

The Fla. Order determined that, **under Florida law**, U.S. Bank had the right to execute

against the Debtors' pending §303(i)(2) lawsuit against U.S. Bank.  In this adversary proceeding,

the Debtors assert entirely different claims: (1) an asserted right to restrict U.S. Bank's efforts to

set off its claim against the Debtor's §303(i) claims or to use its state court judgment to execute

on the claims **based on federal bankruptcy law**; (2) a challenge to the extent, priority, and

validity of U.S. Bank's lien against the Debtors' property on the ground that **federal**

**bankruptcy law** overrides state lien law; and (2) an asserted **federal bankruptcy right** to

equitably subordinate U.S. Bank's claim in connection with the distribution to creditors in this

bankruptcy case.   None of these matters were at issue before the Fla. Trial Court and the

Debtors theoretically could prevail on some or all of these claims without any finding by this

court that the Fla. Trial Court erred..

---

[15]       In opposition to the Motion, the Debtors also argue that the second prong of the Great
Western test has not been satisfied (that the federal plaintiff complains of injuries caused by the
state-court judgments).  It is unnecessary to consider this contention.

I recognize that the Debtors muddied the waters in their opposition to the Sale Motion by making a passing reference to the bankruptcy policy underlying 11 U.S.C. §303(i):

> the claim US Bank is trying to hijack is pending in federal court (and now is on appeal) and is brought under a federal statute [i.e., 11 U.S.C. §303(i)] enacted to discourage abuse of the involuntary bankruptcy process.

(See Debtors' Response to Motion to Sell Chose in Action at 4-5) (RJN, Doc # 21)

However, this comment was made in a section of the Debtors' response to the Sale Motion with the heading:

> **As a matter of Florida law and public policy, US Bank cannot use proceedings supplementary to execute on a chose in action against itself**.

(Debtors' Response to Motion to Sell Chose in Action at 3) (RJN, Doc # 21) (emphasis in original)).

The obvious ambiguity in this heading is whether the Debtors' were basing the argument on " Florida law and [Florida] public policy" or "Florida law and public policy [generally, including federal bankruptcy policy]."

While the issue is not entirely free from doubt, I conclude that the Debtors' reference to §303(i) was made to buttress their core argument that the Fla. Trial Court should prohibit execution on the Debtors' §303(i) claims as a matter of Florida law and Florida  public policy.  I reach this conclusion after closely reviewing the Debtors' opposition to the Sale Motion.

The Debtors' key argument before the Fla. Trial Court was that it should follow Donan v. Dolce Vita, 992 So. 2d 859, 861 (Fla. 4th Dist. Ct. App.  2008).  The Debtors described Donan as holding that it was against Florida public policy and inequitable to permit a creditor to execute against a claim that had been brought against the executing creditor.  The Debtors' then referred to federal bankruptcy policy to suggest that the case before the Fla. Trial Court presented

-20-

"significantly more compelling equitable concerns than a [a creditor's attempt to execute against
a] breach of contract claim."

In context, the Debtors cited federal bankruptcy policy as an additional, generalized
equitable concern – to be considered as part of a general equitable determination – and not as
federal claim that overrides any contrary Florida law under the Supremacy Clause of the U.S.
Constitution. There is no suggestion in the Debtors' submission that federal law supersedes any
contrary Florida law on the subject of allowing judgment execution by a §303(i) defendant
against the §303(i) claim itself.

In short, the essence of the Debtors' opposition to the Sale Motion was that the sale of the
Debtors' §303(i)(2) claim should not be permitted as a matter of Florida law.   In that respect,
none of the Debtors' claims in this adversary proceeding seek to reverse or otherwise undermine
the integrity of the Fla. Order.

Indeed, even if the Fla. Trial Court considered the sole reference to federal bankruptcy
policy in the Debtors' submission in making its ruling on the Sale Motion (and there is no
indication in its opinion that it did), the Rooker-Feldman result would be the same.  The
Complaint raises federal claims that are independent of the state law claim at issue the Fla. Trial
Court and Rooker-Feldman does not apply when "the federal plaintiff presents some independent
claim, even if that claim denies a legal conclusion reached by the state court."  Phila. Ent. &
Dev. Partners, 879 F.3d at 500 (internal citations and quotation marks omitted).

My conclusion that Rooker-Feldman is inapplicable is bolstered further by consideration
of the relief requested by the Debtors. See In re Randall, 358 B.R. 145, 155–56 (Bankr. E.D. Pa.
2006) ("*the relief sought* ... by the federal plaintiff will be particularly significant in determining
whether the Rooker–Feldman doctrine applies") (italics in original).

The Debtors are not asking the bankruptcy court to open or strike the Fla. Order or declare it invalid.  See Great Western, 615 F.3d at 173 (pointing out that in both Rooker and Feldman, "the plaintiffs sought to have the state-court decisions undone or declared null and void by the federal courts").

Nor are the Debtors asking this court to determine that the Fla. Trial Court incorrectly decided the issue before it. To resolve the claims in the Complaint, this court need not consider any of the issues of Florida law decided by the Fla. Trial Court. Consequently, the underlying purpose of Rooker–Feldman, which is based on our federal-state constitutional structure and the principle that federal trial courts should not exercise appellate jurisdiction over state-court judgments, is not implicated.

As the Third Circuit explained in Great Western,  "[w]hen the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment, the second, or federal, court is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment") (internal quotations and citations omitted)."  615 F.3d at 169 (internal quotations and citations omitted).

Having concluded that this court has jurisdiction, I next turn to the merits issues, including the preclusion arguments raised by U.S. Bank.


## IV.  REQUEST FOR DISMISSAL ON THE MERITS: PRECLUSION

### A.  Issue Preclusion: Based on the Fla. Order - First, Second and Third Claims

U.S. Bank argues that all three (3) claims in the Complaint should be dismissed based on

issue preclusion resulting from the Fla. Order.  Respectfully, I disagree.

### 1.  full faith and credit

The application of issue preclusion in a federal court action based on a prior state court judgment is grounded in the federal full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State  . . .  from which they are taken." 28 U.S.C. § 1738; see also Marrese v. Amer. Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).

In determining whether the doctrine bars relitigation of an issue previously determined by a state court, a federal court must apply state law to evaluate whether relitigation would be precluded in the courts of the state in which the initial litigation took place.  "Federal courts must give a state court judgment the same preclusive effect as would the courts of that state." Swineford v. Snyder Cty. PA, 15 F.3d 1258, 1266 (3d Cir. 1994; see also Secretary, United States Dep't of Labor v. Kwasny, 853 F.3d 87, 94 (3d Cir. 2017).

### 2.  issue preclusion under Florida law

In Florida, when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. Neapolitan Enters, LLC v. City of Naples, 185 So.3d 585, 591 (Fla. Dist. Ct. App. 2016) (quotations omitted) (collecting and quoting cases and citing the Restatement (Second) of Judgments §27 (1982)); see also Topps v. State, 865 So.2d 1253, 1255 (Fla. 2004).

Under Florida law, five (5) elements must be satisfied before a party is precluded from litigating an issue based on prior litigation between the parties:

(1)   the issue at stake must be identical to one decided in the prior litigation;

(2)   the issue must have been a critical and necessary part of the prior determination;

(3)   there must have been a full and fair opportunity to litigate that issue;

(4)   the parties in the two proceedings must be identical; and

(5)   the issue must have been actually litigated in the prior proceeding

32A Fla. Jur 2d, Judgments and Decrees §112 (West. 2021) (footnotes and numerous citations omitted); accord Agripost, LLC v. Miami-Dade Cty., 525 F.3d 1049, 1055 (11th Cir. 2008) (describing Florida law and reducing the number of elements to four (4), by combining elements (3) and (5) above).[16]

If all of the elements are met, issue preclusion will apply notwithstanding the pendency of an appeal in the prior proceeding.  See In re DeMasi, 2015 WL 3956135, at *5 (Bankr. M.D. Fla. June 26, 2015), aff'd, 551 B.R. 653 (M.D. Fla. 2016) (citing Reese v. Damato, 44 Fla. 692, 698–699 (Fla. 1902));  Gen. Dynamics Corp. v. Paulucci, 914 So. 2d 507, 510 (Fla. 5th Dist. Ct. App. 2005); see also M.C.G. v. Hillsborough Cty. Sch. Bd., 927 So. 2d 224, 227 (Fla. 2nd Dist. Ct. App. 2006).

---

[16]     One court has observed that there may be another necessary element under Florida law before a court applies the issue preclusion doctrine: that the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case.  In re Hartnett, 330 B.R. 823, 829 (Bankr. S.D. Fla. 2005).  In this proceeding, the Debtors do not contend that there is any disparity in the standard of proof.

### 3.  discussion

U.S. Bank's issue preclusion argument fails because elements (1), (2)  and (5) are not

satisfied.[17]  The issues raised in the Complaint were not raised, litigated or decided in the

proceeding resulting in the Fla. Order.

While the reported opinions may not expressly recognize this point, the propriety of

applying the issue preclusion doctrine often turns on how the parties and the court frame the

issue that was determined in the prior litigation.  That is largely the case here.

As U.S. Bank suggests, the gravamen of the Complaint in this court

> is that U.S. Bank engaged in wrongful and inequitable conduct in causing the
> involuntary bankruptcy petitions to be filed and prosecuted and that, **based on
> bankruptcy public policy, U.S. Bank cannot be permitted to exercise judgment
> enforcement remedies**, assert a lien on the Debtors' § 303(i) claims, assert a set
> off against those claims, sell those claims **or even share *pari passu* with unsecured
> creditors in any distribution under a Chapter 11 plan**.

(U.S. Bank  Mem. at 3) (emphasis added, italics in original).

Essentially, U.S. Bank contends that the Debtors' claim in this court  –  that federal

bankruptcy policy prevents U.S. Bank from executing on the Debtors' §303(i)(2) cause of

action  –  was presented to and necessarily decided by the Fla. Trial Court.

But, it was not.

As discussed in Part III.C., supra, the issue the Debtors litigated in the prior proceeding

was whether the Fla. Trial Court should prohibit execution on the Debtors' §303(i)(2) claim

based on Florida law and Florida public policy, not whether federal law prohibited execution on

---

[17]      The Debtors also argue that they did not have a full and fair opportunity to litigate the
issue whether federal bankruptcy policy prevents U.S. Bank from executing against their §303(i)(2)
claim.  I find it unnecessary to reach that argument.

the federal claim.[18]  On this point, the same analysis that defeated U.S. Bank's Rooker-Feldman

argument also defeats its issue preclusion argument.  In issue preclusion terminology, there is

neither an identity of issues nor an issue that was actually litigated (elements (1) and (5)).

This conclusion is buttressed by the undisputed fact that the Fla. Trial Court made no

reference to bankruptcy policy, which suggests that element (2) for the application of issue

preclusion also is not satisfied here.

To the extent that there is any doubt regarding element (2), I find further support for my

rejection of U.S. Bank's issue preclusion argument in the exercise of the limited discretion a

court has, under Florida law, to decline to apply the issue preclusion doctrine.

There is a substantial body of case law holding that Florida law accords a court some

discretion to decline to apply issue preclusion, where doing so would defeat the ends of justice or

result in a manifest injustice. A fulsome discussion of the issue may be found in In re Hartnett,

330 B.R. 823, 830–31 (Bankr. S.D. Fla. 2005).  But many other courts have stated  – routinely  –

that under Florida law court has some discretion in deciding whether to apply preclusion

doctrines (claim or issue).   See In re Anson, 457 B.R. 130, 136 (Bankr. M.D. Fla. 2011); In re

Daniels, 350 B.R. 619, 626 (Bankr. S.D. Fla. 2006);  In re Rubin, 2000 WL 387657 (Bankr. S.D.

---

[18]      In support of its argument that the issues in the Fla. Trial Court and this court are
identical and were actually litigated, U.S. Bank quotes liberally from the Debtors' Motion to Dismiss U.S.
Bank's Fraudulent Transfer Complaint.  (See U.S. Bank Mem. at 15-16).  In doing so, U.S. Bank seeks to
lead the court down the wrong path.

It is true that in that submission to the Fla. Trial Court, the Debtors argued that the
Fraudulent Transfer Complaint should be dismissed based on federal bankruptcy policy and that their
motion to dismiss was denied.  However, U.S. Bank invokes issue preclusion based on the Fla. Order, not
the fraudulent transfer litigation and no such argument was made in the litigation leading to the entry of
the Fla. Order.  Further, even if I were to look to the fraudulent transfer litigation, no final judgment has
been entered in that matter.  Consequently, the fact that the Debtors were actually litigating the issue in
the fraudulent transfer litigation prior to the commencement of the bankruptcy case is irrelevant; it cannot
result in the application of issue preclusion.

Fla. Apr. 11, 2000); State v. McBride, 848 So.2d 287, 291–92 (Fla. 2003); Emiddio v. Fla.

Office of Fin. Regulation, 147 So. 3d 587, 590 (Fla. 4th Dist. Ct. App. 2014); Aeacus Real Estate

Ltd. P'ship v. 5th Ave. Real Estate Dev., Inc., 948 So.2d 834, 836 (Fla. 4th Dist. Ct. App.  2007);

see also Thacker v. Venn, 579 B.R. 621, 624 (N.D. Fla. 2016)  (the "decision whether to apply

collateral estoppel requires consideration of equitable considerations"), aff'd, 674 F. App'x 973

(11th Cir. 2017).[19]

In the circumstances presented here, where the focus of the Debtors' challenge to the

Sale Motion was based on Florida law and the Fla. Trial Court did not discuss federal

bankruptcy policy, to the extent it is necessary, I exercise my equitable discretion to decline to

apply issue preclusion as requested by U.S. Bank.  See Topps, 865 So.2d at 1257 (stating that a

---

[19]      Many Florida federal courts, in cases involving a prior Florida state court judgment,
acknowledge the existence of judicial discretion in applying issue preclusion without explicitly applying
Florida preclusion law (based on 28 U.S.C. §1738). See, e.g. City of Riviera Beach v. That Certain
Unnamed Gray, Two Story Vessel Approximately Fifty-Seven Feet In Length, 649 F.3d 1259, 1274 (11th
Cir. 2011), rev'd on other grounds,  133 S. Ct. 735 (2013); In re Ragucci, 433 B.R. 889, 895 (Bankr. M.D.
Fla. 2010).

In cases involving prior federal judgments and judgments from other states, other courts
in the 11th Circuit frequently  reference the court's discretion regarding the application of issue preclusion
as a general principle.  Courts in all of these categories often cite  Parklane Hosiery Co. v. Shore, 439
U.S. 322 (1979) or In re Bush, 62 F.3d 1319  (11th Cir. 1995) in support of their position.

One might question whether Parklane Hosiery or Bush fully support the broad
proposition that a court has discretion in determining whether to apply issue preclusion (under Florida law
or otherwise).  Parklane Hosiery held that a court has the authority to decline to apply issue preclusion
when it is offered "offensively" (and did not involve the more common request for the application of
"defensive" issue preclusion). In Bush (which was based on a prior federal judgment, not a Florida state
court judgment ), the court  held that courts have  the authority to apply issue preclusion where the prior
judgment was entered as a discovery sanction, rather than after a full trial on the merits.  Consequently,
Bush could be viewed as providing a gloss on the "actually litigated" requirement for issue preclusion,
rather than as the exercise of the court's equitable discretion).

Nevertheless, what is significant for present purposes is that a judicial consensus exists
affirming that  courts have some discretion in applying or not applying issue preclusion, a position that is
supported by the Restatement (Second) of Judgments § 28(2)(b), (3) (1982).

court may decline to apply issue preclusion "if a matter has not been determined on the merits and if it is more appropriate for that later court to determine the merits of the issue"); <u>see also</u> <u>Restatement (Second) of Judgments</u> § 28(2)(b), (3) (1982).

### B. Claim Preclusion: Based on the District Court Opinion - First and Second Claims

### 1. introduction

In their  First Claim, the Debtors request that the court declare that:

1. U.S. Bank is prohibited from sharing in the proceeds of Debtors' §303(i) claims, (Complaint ¶ 121(a));

2. U.S. Bank is prohibited from setting off (or crediting) its bankruptcy claim against its §303(i) liability to the Debtors, (Complaint ¶ 121(b));

3. U.S. Bank is prohibited from taking any action to interfere with the Debtors' prosecution of their claims under §303(i) (other than defending in the §303(i) litigation), (Complaint ¶ 121(c)); and

4. under any plan proposed by the Debtors, U.S. Bank's claim must be

   (a) separately classified from the claims of all other creditors;

   (b) identified as junior in priority to all other classes of claims; and

   (c) prohibited from receiving any distribution derived from any recovery from the Debtors' §303(i) claims, even if all the Debtors' other creditors in full, (Complaint ¶ 121(d), (e)).[20]

In their Second Claim, the Debtors seek a final determination as to the extent, priority and validity of the liens asserted by Defendant U.S. Bank.  The Debtor's position is that U.S. Bank lacks a valid lien position because, under 11 U.S.C. §303(i), U.S. Bank "is prohibited from

---

[20]      In Paragraph 121(d) of the Complaint, the Debtors also request a determination that: "U.S. Bank's claim shall not receive any distribution, payment or set off from or against the Section 303(i) claims and proceeds paid to the Debtors' estates in connection therewith  . . . ."  As the request for a determination regarding U.S. Bank's set off rights is duplicative of the other requests in Paragraph 121, I will not discuss it further.

asserting a claim against or interest in the proceeds derived by its misconduct." (Id. ¶ 126).

Based on the District Court Opinion, U.S. Bank invokes the claim preclusion doctrine

and seeks dismissal of the First and Second Claims of the Complaint.

To properly analyze U.S. Bank's claim preclusion argument, it is first  necessary to

examine (briefly) the District Court Opinion and its affirmance by the Court of Appeals.


### 2.  the District Court Opinion and Court of Appeals' affirmance

As stated in Part II.B.2, the District Court withdrew the reference of the Debtors'

§303(i)(2) claim against U.S. Bank on September 16, 2016 and entered summary judgment in

favor of U.S. Bank and against the Debtors on August 28, 2019.

The District Court summarized the Debtors' §303(i)(2) claim as follows:

> NMI seeks compensatory and punitive damages for the alleged harm to NMI
> arising from the involuntary bankruptcy petitions. NMI contends that Defendants
> filed the petitions in bad faith and as a result:
>
>> [T]he Plaintiffs' valuable businesses were destroyed because, among other
>> reasons, the commencement and continued prosecution of the involuntary
>> bankruptcy cases: (1) caused Plaintiffs to lose preferred provider status
>> with major insurers; (2) caused physicians to lose confidence in the
>> Plaintiffs' stability and to divert their patients to other providers; (3)
>> caused lenders to cutoff the Plaintiffs' access to receivables, thereby
>> creating a liquidity crisis; (4) caused vendors to put the companies on a
>> COD basis, thereby further eroding cash and liquidity; and (5) destroyed
>> Plaintiffs' reputations in the community, and torpedoed planned
>> acquisitions and expansion

District Court Opinion, 2019 WL 4076768, at *3.

In seeking summary judgment, in the District Court, U.S. Bank argued that there were no

issues of material fact and that as a matter of law::

1. U.S. Bank did not act in bad faith in filing the involuntary bankruptcy
   petitions;

2. the Debtors suffered no actual damages proximately caused by U.S. Bank's actions; and

3. the evidence would not support an award of punitive damages.

2019 WL 4076768, at *4.

In response, the Debtors argued that there summary judgment should not be granted due to the existence of disputed issues of material fact with respect to all three (3) issues.

The District Court ruled that the summary judgment record established that

1.  there were sufficient indicia of bad faith (although described by the court as "limited") to " preclude any determination on [the bad faith] issue as a matter of law."

2. there was no disputed issue regarding causation; specifically that "NMI's financial difficulties were caused by factors independent of the involuntary bankruptcy petitions;" and

3. "the evidence relating to bad faith did not rise to a level that would merit punitive damages, especially considering NMI's severe financial distress."

Id.

The District Court granted U.S. Bank summary judgment on the §303(i)(2) claim because it concluded that, notwithstanding the existence of an issue of material fact regarding bad faith, the Debtors were not entitled to either punitive or compensatory damages as a matter of law.

In affirming the District Court, the Court of Appeals held that "even if the creditors acted with some degree of bad faith, they are entitled to summary judgment because their behavior was not such as to warrant punitive damages and NMI cannot prove the involuntary bankruptcy proximately caused it any harm."  818 F. App'x at 133.[21]

---

[21]    On the punitive damages issue, the Debtors argued on appeal that summary judgment was entered improperly because  the determination regarding the propriety of punitive damages turns on the facts relating to bad faith, an issue on which summary judgment was not granted.  However, the Court of Appeals concluded that, even accepting the Debtors' evidence of bad faith "at face value," 818 F. App'x

(continued...)

### 3.  federal claim preclusion: legal principles

As U.S. Bank's claim preclusion defense is based on a prior federal judgment, "federal claim preclusion" (i.e., federal common law, rather than state preclusion law) applies.  Taylor v. Sturgell, 128 S. Ct. 2161, 2171 (2008).

The purpose of the claim preclusion doctrine is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."  Davis v. Wells Fargo, 824 F.3d 333, 341-42 (3d Cir. 2016).

For claim preclusion to apply based on prior litigation in federal court, there are three (3) requirements: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action."  Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir.1991); see also Davis, 824 F.3d at 341.

Claim preclusion bars not only claims that were brought in the previous action, but also claims that could have been brought, Elkadrawy v. Vanguard Group., Inc., 584 F.3d 169, 173 (3d Cir. 2009); In re Mullarkey, 536 F.3d 215, 225 (3d Cir. 2008), thereby "avoid[ing] piecemeal litigation of claims arising from the same events."  Churchill v. Star Enters., 183 F.3d 184, 194

---

[21](...continued)
at 134, the evidence  was insufficient to warrant an award of punitive damages.  The court referenced the Fox "Out File" e-mail, see n.8, supra, depicting it as "certainly suggestive of an aggressive litigation strategy, but, on this record, [not constituting] evidence warranting an award of punitive damages." Id.

As for the compensatory damages issue, after reviewing the evidentiary record, the Court of Appeals concluded that:

> [b]ecause the involuntary bankruptcy petition was filed when NMI was already in irreversible decline – by all appearances on the precipice of complete collapse – the petition was not the proximate cause of the business's failure.

Id. at 136.

(3d Cir. 1999).  Of course, the corollary to this proposition is that claim preclusion does not

apply if the later-filed action could not have been included in the first proceeding.  E.g.,

NextGear Capital, Inc. v. Gutierrez, 2019 WL 1896563, at *8 (M.D. Pa. Apr. 29, 2019); In re

Phila. Entm't & Dev. Partners, L.P., 611 B.R. 51, 60–61 (Bankr. E.D. Pa. 2019), aff'd, 2020 WL

5810056 (E.D. Pa. Sept. 30, 2020); In re Cowden, 337 B.R. 512, 529 (Bankr. W.D. Pa. 2006).

The concepts of "the same cause of action" and the use of claim preclusion to bar a

subsequent claim that could have been brought in the prior litigation (sometimes referred to as

"splitting" a cause of action) are two (2) sides of the same coin.  If a later-filed claim is part of a

single cause of action previously litigated, it is subject to dismissal based on claim preclusion.

The more difficult inquiry is determining the scope of a "cause of action" that gives rise

to claim preclusion:

> [T]the term  [c]ause of action cannot be precisely defined, nor can a simple test be
> cited for use in determining what constitutes a cause of action for res judicata
> purposes." . . . [T]he term has been given varied treatment depending upon the facts
> in each case and the inquiry is often fraught with conceptual difficulties

United States v. Athlone Indus., Inc., 746 F.2d 977, 984 (3d Cir. 1984) (quotations and citations

omitted) (emphasis added).

In the Third Circuit, courts take a "broad view" of what constitutes a cause of action,

applying claim preclusion when the later claim "turn[s] on the *essential similarity* of the

underlying events giving rise to the various legal claims."  Blunt v. Lower Merion Sch. Dist.,

767 F.3d 247, 277 (3d Cir. 2014) (quotation and citation omitted) (italics in original).  In

evaluating "essential similarity," courts consider the following factors:

1.   whether the acts complained of and the demand for relief are the same;

2.   whether the theory of recovery is the same;

3.   whether the witnesses and documents necessary at trial are the same; and

4.    whether the material facts alleged are the same.

Id. (collecting cases).

As the discussion above suggests, the determination whether a later-filed claim is part of a previously filed cause of action requires, at least to some extent, a holistic analysis in which the court consider various factors and determines whether application of claim preclusion is consistent with the fundamental policies underlying the doctrine.  See Athlone Indus., 746 F.2d at 984 ("We therefore do not adhere to any mechanical application of a single test **but instead focus on the central purpose of the doctrine of res judicata")** (emphasis added).


**4. categorizing/characterizing the Debtors' claims for relief**

In their §303(i)(2) claim in the District Court, the Debtors requested that the court award them money damages on the ground that U.S. Bank filed the November 2008 involuntary bankruptcy petitions in bad faith.  To rule on U.S. Bank's claim preclusion argument, I must determine if the Debtors' First and Second Claims are part of that earlier cause of action and should have been brought before the District Court.

To properly evaluate U.S. Bank's claim preclusion argument, it is helpful to recategorize the Debtors' claims and sub-claims.  In doing so, I perceive three (3) distinct categories of relief requested by the Debtors in the First and Second Claims.

In the first category, found in the First Claim, the Debtors' seek to prevent U.S. Bank from engaging in conduct that, in the Debtors' view, would attenuate or vitiate entirely the efficacy of the Debtors' §303(i) cause of action.  This category includes the Debtors' request for a determination that U.S. Bank may not setoff the Debtors' underlying debt to U.S. Bank against any §303(i) liability that U.S. Bank may have, or to use its state court judgments to execute

-33-

against the Debtors' §303(i) claims, i.e., the request for relief in Complaint ¶ 121(b) and (c).

The second category, found in the Second Claim, involves the proper classification of U.S. Bank's claim, the Debtors contending that §303(i) bankruptcy policy provides grounds for disallowing any secured position that U.S. Bank may have on the Debtors' §303(i) claims and the proceeds thereof.

The third category, which takes us back into the First Claim, involves issues in the administration of this bankruptcy case, specifically, the treatment of U.S. Bank in a chapter 11 plan of reorganization.  In these claims, which are stated in Paragraphs 121(a), (d) and (e) of the Complaint, the Debtors seek to preclude U.S. Bank from sharing in the distribution of a certain category of estate assets (i.e., money collected by the estate derived from the §303(i) claims),[22] and a determination that U.S. Bank's claim must be separately classified and subordinated to other creditors in any distribution under a chapter 11 plan.

This distinction among these three (3) categories has consequences for purposes of the application of claim preclusion and I consider them separately below (although not in order).

### 5. discussion: claims related to bankruptcy case administration

I begin with the third category.

Insofar as the Debtors request a judicial declaration that U.S. Bank's claim may not share in any distribution derived from the fruits of the §303(i) claims in the distribution to creditors under a chapter 11 plan and that its claim  must be separately classified and determined to be junior in priority to other creditors in any distribution in this bankruptcy case, (Complaint ¶

---

[22]      Of course, what adds to the singular flavor of this case is the fact that the §303(i) claims are the sole assets of the bankruptcy estate.

121(a), (d) and (e)), I will grant U.S. Bank's Motion, ***but on grounds other than that raised by***

***U.S. Bank***.

I perceive no material difference between declaratory relief sought in this " third

category" and the relief potentially afforded by the Debtors' Third Claim (equitable

subordination under 11 U.S.C. §510). Consequently, this aspect of the First Claim is

superfluous. A declaratory judgment on this issue adds nothing to the relief requested in the

Debtors' Third Claim for equitable subordination.

I recognize that, as phrased, a request for a determination that U.S. Bank may not "share"

in any §303(i) proceeds goes beyond subordination and requests a total prohibition. However, to

the extent that the claim is not subsumed by the equitable subordination request made in the

Third Claim, the relief requested by the Debtors regarding "distribution" is intertwined with the

terms of the Debtors' (future and as yet unfiled) proposed chapter 11 plan of reorganization. As

such, it is preferable to resolve plan confirmation issues relating to U.S. Bank's treatment

through the plan confirmation process, rather than in a two-party adversary proceeding. See

generally Fed. R. Bankr. P. 3016-3019 (setting forth detailed procedures for confirmation of a

chapter 11 plan).

Therefore, I will dismiss the Debtors' First Claim, as set forth in Complaint ¶ 121(a), (d)

and (e) without prejudice. See Carlson v. Amica Mut. Ins. Co., 2018 WL 10809978, at *3 (E.D.

Pa. Mar. 12, 2018) ("if a party seeks declaratory relief that is redundant with claims already

presented, courts may dismiss the claim which seeks declaratory relief for failure to state a

claim").[23]

---

[23]    See also Charles Alan Wright & Arthur R. Miller, 10B Fed. Prac. & Proc. Civ. §2758
(4th ed.):

(continued...)

**6.  claims seeking a determination of the validity, priority or extent of U.S. Bank's secured
status in the bankruptcy case**

U.S. Bank's request for dismissal of the Second Claim (which falls into the second

category discussed above) on claim preclusion grounds is easily rejected.

The Second Claim is a request for a determination of the validity, priority or extent of

U.S. Bank's secured status.  <u>See</u> Fed. R. Bankr. P. 7001(2).[24]  In essence, the Second Claim

asserts that U.S. Bank's claimed secured position against the Debtors' assets is invalid as a

matter of federal law, the Debtors basing their position on 11 U.S.C. §303(i), which they argue

prevents "a wrongdoer who is liable under Section 303(i) . . . from asserting a claim against or

interest in the proceeds derived by its misconduct."  (Complaint ¶ 126).

The merits of the Debtors' position on this subject is not yet ready for decision.  What is

clear, however, is that the Second Claim is not the type of claim that was capable of being

---

[23](...continued)

> [A]s stated in[Fed. R. Civ. P.57 . . .  the existence of another adequate remedy
> does not bar a declaratory judgment. The court, however, in the exercise of the
> discretion that it always has in determining whether to give a declaratory
> judgment,  properly may refuse declaratory relief if the alternative remedy is
> better or more effective.  (footnote omitted)

For what it is worth (and it probably does not make a material difference), Fed. R. Civ. P.
57, which explicitly authorizes the issuance of a declaratory judgment even when another remedy is
available, is not incorporated by the Federal Rules of Bankruptcy Procedure governing bankruptcy
adversary proceedings .

[24]     While U.S. Bank has not filed a proof of claim, it has asserted in other filings in this court
that it is a secured creditor. (<u>See</u> U.S. Bank Reply Memorandum in Support of Motion for Relief from
Automatic Stay at 3-5) (Bky. No. 20-12618, Doc. # 91). The absence of a filed proof of claim is of no
moment.  <u>See</u> <u>In re Carlton</u>, 437 B.R. 412, 427 n.18 (Bankr. N.D. Ala. 2010)  <u>In re Demoff</u>, 109 B.R. 902,
904 n.2 (Bankr. N.D. Ind. 1989).  Indeed, Fed. R. Bankr. P. 7001(2) refers to the determination of the
validity, priority or extent "of a lien," not the validity, priority or extent of a "secured claim."  Thus,
assuming that the issues affects the bankruptcy case in a manner sufficient to provide subject matter
jurisdiction, a debtor may obtain a bankruptcy court determination regarding the status of a lienholder
who has not filed a proof of claim, by initiating an adversary proceeding and serving the lienholder
pursuant to Fed. R. Bankr. P. 7004.

brought as part of the Debtors' §303(i)(2) action in the District Court.

There was no bankruptcy case pending during the course of the litigation in the District Court.  There is no reason for a §303(i) plaintiff (a former, putative bankruptcy debtor, but who is not in bankruptcy at the time that the §303(i) action is instituted), to seek any kind of determination regarding the §303(i) defendant's possible secured status in a future bankruptcy that has not been, and may never be, filed.  Such a claim could arise only after a bankruptcy case has been filed and therefore, it could not have been brought in the District Court.  Consequently, claim preclusion does not apply to the Second Claim.  See Bennett v. Garner, 913 F.3d 436, 442 (4th Cir. 2019); In re Phila. Entm't & Dev. Partners, 611 B.R. at 60–61; In re Brandao, 567 B.R. 396, 405 n.3 (Bankr. D. Mass. 2017).

### 7. claims seeking denial of U.S. Bank set off or execution rights

Finally, I consider U.S. Bank's claim preclusion argument with respect to the first category, those aspects of the First Claim, (found in Complaint ¶ 121(b) and (c)), in which the Debtors seek to prevent set off or execution against their §303(i) claims.

Consistent with the principles articulated by the Third Circuit, I view this aspect of the Debtors' First Claim functionally.  The "first category" can be distilled down to a single, legal proposition: based on the public policy underlying the creation of a cause of action under §303(i) (creating liability of various types for a creditor that initiates an involuntary bankruptcy petition that is dismissed), the bankruptcy court may invoke 11 U.S.C. §105(a) to prevent a §303(i) defendant (who is also a creditor of the debtor) from engaging in conduct that would attenuate or vitiate the §303(i) remedy  – conduct such as:

- interfering with the prosecution of a §303(i) claim by executing on any judgment it may hold on the underlying debt or otherwise; and

- setting off the debtor's debt against the creditors' §303(i) liability.

U.S. Bank argues that the Debtors' claim was litigated in the bankruptcy court because it is based on the "same nucleus of fact" and is an attempt "to relitigate the core allegations of the Debtors' District Court bad-faith claim." (U.S. Bank Mem. at 10, 12).  U.S. Bank suggests that, in addition to seeking money damages in  the District Court, the Debtors also could have requested the same relief that they presently seek in this court.

Respectfully, I disagree.

Initially, U.S. Bank overlooks that there is more to the "first category"/ First Claim than the §303(i)(2) claim that was determined in  the District Court.  The Debtors also have a §303(i)(1) claim that is pending in this court.

Unlike the §303(i)(2) claim, the §303(i)(1) claim pending in this court is no way dependent on proof of U.S. Bank's alleged bad faith. Further, considering that the §303(i)(1) was separated from the §303(i)(2) claim in the District Court,(when the District Court withdrew the reference of the §303(i)(2) claim, but left the §303(i)(1) claim in the bankruptcy court), it would be absurd to find that the Debtors' present efforts in this court  to "protect" the §303(i)(1) claim still pending in this court should have been raised as part of the §303(i)(2) claim in the District Court.  Thus, claim preclusion cannot apply to bar this component of the First Claim insofar as it relates the Debtors' §303(i)(1) claim.

As for the Debtors' efforts in this court to "protect" the §303(i)(2) claim presently on appeal from the adverse District Court judgment, after considering the four (4) factors identified by the Third Circuit, see Part IV.B.3, supra, I determine that it too, was not part of the Debtors' District Court §303(i)(2) action.

The evidence that is relevant to this component of the Debtors' First Claim is distinct

from the relevant evidence in the District Court §303(i)(2) action.  In this court, the evidence

will focus on U.S. Bank's relatively recent conduct, starting in 2019, in seeking to enforce its

state court money judgment in Florida.  In the District Court, the focus was on the parties'

conduct that occurred back in 2008.

The legal theories of recovery differ.  In  the District Court, the theory of recovery

required a factual showing of bad faith conduct and actual damages or, in the absence of actual

damages, bad faith conduct sufficient to warrant an award of punitive damages.  In this court, the

theory of recovery is based largely on a pure issue of law: the Debtors' contention that, in

appropriate circumstances, based on the public policy underlying 11 U.S.C. §303(i),  a court

should restrain  a §303(i) defendant from engaging in conduct that might vitiate, or dilute, the

efficacy of the §303(i)  bankruptcy cause of action.  The merits of the Debtors argument likely

turns on a construction of the Bankruptcy Code, including 11 U.S.C. §105, not on a

characterization of U.S. Bank's conduct in 2008.

The relief requested also differs in the two (2) proceedings.  The §303(i)(2) action in  the

District Court is a straightforward request for money damages.  Here, the Debtors are requesting

declaratory relief designed to protect their right to prosecute their §303(i) claims and to

safeguard any recovery they might obtain.

In short, there is minimal overlap between the claims in the two (2) courts and an

insufficient overlap to warrant the application of claim preclusion.

At bottom, U.S. Bank offers up the following novel proposition (for which it cites no

legal authority): if a plaintiff initiates an action seeking damages on grounds that might preclude

the defendant from later applying a right of set off or extinguishing the pending action by

execution on a judgment it may hold against the plaintiff, the plaintiff must include in its

complaint a request for relief declaring that the defendant may not take such actions in the future
– even before the plaintiff has succeeded in establishing the defendant's liability or before the
defendant has given any indication of its intent to set off or execute against the plaintiff's claim
– and that the plaintiff's failure to do so constitutes "splitting" the plaintiff's cause of action,
thereby  barring a later request for relief.  This contention is without merit.

In short, as this case illustrates, (U.S. Bank having waited several years after obtaining its
state court confessed judgment  before it sought to execute against the Debtors' §303(i)(2)
"chose in action"),  the claim preclusion doctrine does not require parties to be "clairvoyant."
Bennett, 913 F.3d at 442.

### C. Issue Preclusion:
### Based on the District Court Opinion - Third Claim

U.S. Bank contends that the Debtors' Third Claim, for equitable subordination under 11
U.S.C. §510, should be dismissed based on the application of issue preclusion and the District
Court Opinion.

I agree with U.S. Bank that the Third Claim should be dismissed.

### 1.  federal issue preclusion: legal principles

Because the prior judgment was rendered by a federal court, federal principles of issue
preclusion apply.  In re Docteroff, 133 F.3d 210, 214 (3d Cir. 1997); see also In re Hechinger
Inv. Co., 278 F. App'x 125, 128 n.3 (3d Cir. 2008) (nonprecedential).

For the litigation of an issue to be precluded based on a prior federal court judgment, the
following elements must exist:

1.  the issue sought to be precluded must be the same as the one involved in the prior

-40-

action;

2.   the issue must have been actually litigated;

3.   the issue must have been determined by a valid and final judgment; and

4.   the determination must have been essential to the prior judgment.

Docteroff, 133 F.3d at 214.

The pendency of an appeal of the prior judgment (as we have here) does not strip the judgment of its preclusive effect.  See Kokinda v. Pennsylvania Dep't of Corr., 803 F. App'x 574, 577 (3d Cir. 2020) (nonprecedential) (citing U.S. v. 5 Unlabeled Boxes, 572 F.3d 169, 175 (3d Cir. 2009)); see also O'Leary v. Liberty Mut. Ins. Co., 923 F.2d 1062, 1066 n.6 (3d Cir. 1991) (stating same principle based on a prior state court judgment).


## 2.  equitable subordination under 11 U.S.C. §510(c)

U.S. Bank argues that  the District Court determined that the Debtors (and by implication, their creditors) suffered no damages as a result of U.S. Bank's conduct in filing the involuntary petitions and therefore, the Debtors cannot establish an essential element of a claim for equitable subordination.

11 U.S.C. §510(b) provides:

[A]fter notice and a hearing, the court may—

(1)   under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2)  order that any lien securing such a subordinated claim be transferred to the estate.

Equitable subordination of a claim is proper when:

1. the claimant engaged in some type of inequitable conduct;

2. the misconduct resulted in injury to the creditors or conferred an unfair advantage on the claimant; and

3. equitable subordination of the claim is consistent with the provisions of the Bankruptcy Code.

In re Winstar Commun's, Inc., 554 F.3d 382, 411–12 (3d Cir. 2009); Citicorp Venture Capital,

Ltd. v. Comm. of Unsecured Creditors, 160 F.3d 982, 986–87 (3d Cir.1998).  These

requirements are derived from the influential case, In re Mobile Steel Co., 563 F.2d 692, (5th

Cir.1977), and often are referred to as the Mobile Steel requirements.

I have previously described the purpose and application of the equitable subordination

power as follows:

> The purpose of equitable subordination is to undo or to offset any inequality in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results.  A claimant who fairly obtains and asserts a claim can still be subordinated if it engages in subsequent misconduct that harms other creditors.

> . . .

> A non-insider can be subordinated even if he or she did not specifically commit fraud, spoliation or overreaching – these are just helpful examples, repeatedly referenced in the case law, of the more egregious conduct necessary for subordination.   Any very substantial' misconduct involving moral turpitude or some breach of duty or some misrepresentation whereby other creditors were deceived to their damage can justify subordination.

> The exercise of contractual rights is not inequitable, even if the rights are exercised harshly and cause harm to other creditors. Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for their lack of good faith.

In re Island View Crossing II, L.P., 604 B.R. 181, 202-03 (Bankr. E.D. Pa. 2019) (quotations and

citations omitted).

Other principles governing the application of the §510(c) equitable subordination power

include:

- if the claimant's misconduct resulted in harm to the entire creditor body, the party seeking equitable subordination need not identify the injured creditors or quantify their injury, but need only show that the creditors were harmed in some concrete manner, In re Broadstripe, LLC, 444 B.R. 51 (Bankr. D. Del. 2010);

- the type of injury that may support equitable subordination includes a claim that general creditors are less likely to collect their debts as a result of the alleged inequitable conduct, In re KDI Holdings, Inc., 277 B.R. 493, 509 (Bankr. S.D.N.Y. 1999);

- a claim should be subordinated only to the extent necessary to offset the harm which the bankrupt and its creditors suffered on account of the inequitable conduct, Winstar, 554 F.3d at 413; and

- while quantification of the harm caused to a debtor or its creditors is unnecessary, the bankruptcy court still must identify the nature and extent of the harm in order to maintain "the proportionality of the remedy to the injury that has been suffered by those who will benefit from the subordination." Id. (quoting Citicorp Venture Capital, 160 F.3d at 991).

### 3. discussion

There is no dispute that three (3) of the four (4) Mobil Steel elements for the application of issue preclusion exist here. The District Court's determination that the Debtors suffered no actual damages as a result of the dismissed was actually litigated; it was determined by a valid and final judgment and, most certainly, it was essential to the judgment it entered in favor of U.S. Bank and against the Debtors. (Indeed, it was the keystone of the District Court decision, as well as the affirmance by the Court of Appeals).

On the final requirement for issue preclusion – the identity of the issue decided in the prior case and the issue sought to be precluded in the present case – U.S. Bank's position seems perfectly intuitive. If the Debtors suffered no compensatory damages as a result of U.S. Bank's conduct, how was there an injury to the Debtors or their creditors or an unfair advantage

obtained by U.S. Bank?

The Debtors argue that the District Court finding that the Debtors suffered no compensatory damages is not the same issue as whether U.S. Bank's (alleged inequitable) conduct caused "injury to the debtor or creditors" or conferred an "unfair advantage" on U.S. Bank, as required under 11 U.S.C. §510. They suggest that "to demonstrate injury for purposes of equitable subordination, a debtor is not required to quantify specific harms to the estate or individual creditors, as long as some concrete harm to the debtor or the creditor body in general is shown." (Debtor's Mem. at 35).

The Debtors' response is true as far as it goes. 11 U.S.C. §510(c) does not require a quantification of the harm suffered by the debtor or creditors. But, still, there must be an allegation (and later, proof of) some concrete harm or unfair advantage to support a claim for equitable subordination. Even in the three (3) cases cited by the Debtors on this issue, the courts identified evidence suggesting that the debtor suffered some specific financial harm as a result of the defendant's conduct. See Winstar, 554 F.3d at 414 (debtor damaged by the purchase of $240 million in unnecessary equipment); In re 604 Columbus Ave. Realty Tr., 968 F.2d 1332, 1363 (1st Cir. 1992) (the alleged misconduct damaged other creditors by depleting the debtor's assets); In re Toy King Distrib's., Inc., 256 B.R. 1, 202 (Bankr. M.D. Fla. 2000) (the defendant's usurpation of corporate opportunity "siphoned needed cash from the debtor").

I have scoured the Complaint for an allegation of some form of concrete harm to the Debtors or their creditors (or unfair advantage obtained by U.S. Bank) caused by the alleged bad faith filing of the involuntary bankruptcy petitions  –  other than the kind of traditional harm remediable as compensatory monetary damages that the District Court determined did not exist. I have located no factual allegations that support the Debtors' position.

-44-

In Paragraph 76 of the Complaint, the Debtors allege: "In March 2009, under the weight of the Involuntary Petitions, the Debtors' business continued to suffocate; they were forced to close additional centers." This allegation is inadequate. The phrase "under the weight" is particularly opaque. Even if the Debtors meant to say that the filing of the involuntary petitions somehow caused additional centers to close, the allegation has meaning only if it harmed the Debtors' financial position, in which case they would have suffered some form of monetary loss. Yet, the District Court's finding was that there were no damages linked to filing of the involuntary petitions.

Paragraph 77 states:

> On March 25, 2009, Sterling National Bank ("Sterling"), a lender that held collateral related to NMI's accounts receivable, notified NMI that it was in default due to the filing of the Involuntary Petitions that remained pending thirty days after they were filed. Sterling asked for additional collateral from NMI because of the pending Involuntary Petitions, which led to a forbearance agreement between NMI and Sterling.

This, too, is inadequate. The mere declaration of a default by a lender, the request for additional collateral and a resulting forbearance agreement are not concrete harms that could justify equitable subordination, at least without some further explanation of the asserted harmful impact of these actions.

Finally, in Paragraph 132 of the Complaint, the Debtors allege: "As a result of the wrongdoing of the Defendant, all creditors of the Debtors have been injured and the Defendant has obtained an unfair advantage over those creditors."

This allegation is nothing more than a conclusory parroting of the required element of a §510(c) claim and, as such, fails to provide sufficient factual detail to survive a motion to dismiss. See Ashcroft v. Iqbal, 556 U.S. 662, 678, (2009) ("a formulaic recitation of the elements of a cause of action will not do") (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955,

1966 (2007)) In re NewStarcom Holdings Inc., 816 F. App'x 675, 678 (3d Cir. 2020)

(nonprecedential); Perry v. Oxford Law, LLC, 2012 WL 3731802, at *4 (E.D. Pa. Aug. 29,

2012).

     The Debtors attempt to salvage their position by pointing out, correctly, that the

Complaint refers to alleged inequitable conduct unrelated to the prosecution and resolution of the

§303(i)(2) claim in  the District Court.  Paragraph 131 of the Complaint refers to U.S. Bank

> [m]isusing Florida state-court process in a scheme to execute on the Debtors'
> Section 303(i)(2) claims and shut down the litigation against itself and the other §
> 303(i) Defendants—to the substantial detriment of the Debtors' other creditors
> and in callous disregard for the equitable principles underlying Section 303(i).

     This argument is unpersuasive.

     While the Debtors' position that federal bankruptcy law may be invoked to prevent a

§303(i) defendant from using a judgment it holds against a former putative debtor to execute

against the former putative debtor's §303(i) claim may prove meritorious, such conduct does not

rise to the level of fraud, spoliation, or other egregious conduct involving moral turpitude or

breach of clear duty sufficient to justify subordination.  The law is not sufficiently settled on this

issue to warrant subordination of U.S. Bank's claim simply because it took a colorable legal

position (i.e., that it may exercise its rights under applicable state law to execute against the

Debtors' §303(i) claims and that such action is not prohibited by the Bankruptcy Code), even

though the courts may ultimately reject U.S. Bank's position.  While the policy underlying is

§303(i) is strong, in the absence of some explicit statutory provision or unambiguous,

unquestioned case law on the issue, applying  such a "strict liability" standard to creditors who

seek to enforce their rights and remedies under nonbankruptcy law would be inconsistent with

the standards under 11 U.S.C. §510(c) for imposing equitable subordination.[25]

Thus, the Debtors' last-ditch argument in support of the Third Claim is unavailing. Notwithstanding the potential impropriety of U.S. Bank's Florida collection efforts, the factual allegations in the Complaint still fall short of providing a plausible claim for equitable subordination under 11 U.S.C. §510(c).[26]

## V.  OTHER GROUNDS ASSERTED FOR DISMISSAL OF THE FIRST AND SECOND CLAIMS

### A.  Introduction

U.S. Bank raises several additional arguments for dismissal of the Debtors' remaining claims, i.e., those stated in the First Claim (at Complaint ¶ 121(b) and (c)) and in the Second Claim of the Complaint.

---

[25]     In addition, it is difficult to identify any harm actually suffered by the Debtors (other than perhaps the need to incur some legal expenses) or by creditors as a result of U.S. Bank's collection efforts in Florida.  U.S. Bank did not succeed in its collection efforts.  The Debtors' legal rights and assets were intact when the bankruptcy estate was created.

The only potential "unfair advantage" gained by U.S. Bank was the creation of a lien position on the asset.  But given the logic of the Debtors underlying legal theory regarding §303(i) claims, if they prevail, it seems inevitable that the lien would be invalidated as part of their request for relief in enforcing §303(i).  In effect, in this respect, the §510(c) Third Claim adds nothing to the First and Second Claim insofar as U.S. Bank's lien position is concerned.

[26]     U.S. Bank also argues that an equitable distribution claim is premature because it has not filed a proof of claim.  See, e.g., In re Tronox Inc., 429 B.R. 73, 109 (Bankr. S.D.N.Y. 2010).  The Debtor counters by arguing that there are circumstances in which a court may exercise its discretion to consider equitable subordination in the absence of a filed, allowed claim.  See In re AlphaStar Ins. Group Ltd., 383 B.R. 231, 276 (Bankr. S.D.N.Y. 2008); In re Manhattan Inv. Fund Ltd., 310 B.R. 500, 513 (Bankr. S.D.N.Y. 2002).

In light of the determination that the Third Claim should be dismissed on other grounds, it is unnecessary to decide this issue.

U.S. Bank contends that

- the First Claim should be dismissed based on the Anti-Injunction Act;

- the First Claim should be dismissed because it fails to plead facts that would entitle the Debtors to injunctive relief; and

- the Second Claim should be dismissed for failure to join necessary parties

As explained below, with one (1) exception, these arguments do not warrant dismissal of the Debtors' First and Second Claims.

## B.  The First Claim

### 1.  distinguishing the two (2) remaining claims for relief

The components of the  First Claim that have survived the other grounds for dismissal previously discussed are, the Debtors' request that the court declare that:

1. U.S. Bank may not set off its claim/judgment against any §303(i) liability it may have, (Complaint ¶ 121(b)); and

2. U.S. Bank is prohibited from taking any action to interfere with the Debtors' prosecution of their §303(i)  claims (other than defending against them in the courts in which they are being prosecuted), (Complaint ¶ 121(d)).

U.S. Bank contends that even though these claims are articulated as request for declaratory relief, they amount to and should be treated as a request for an injunction  (U.S. Bank Mem. at 33). U.S. Bank then argues that:

1. this court lacks the power to enter such an injunction due to the federal Anti-Injunction Act, 28 U.S.C. §2283;[27] and

2. the Complaint fails to state facts that support all of the elements for the

---

[27]    28 U.S.C. §2283 provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

issuance of an injunction.

In analyzing U.S. Bank's argument, it is necessary to consider separately the request for dismissal of the claim for a determination that U.S. Bank is not entitled to setoff and the claim seeking a determination that U.S. Bank may not interfere with the Debtors' prosecution of their §303(i) claims.


## 2.  discussion re: setoff issue

With respect to the Debtors' request for a determination that U.S. Bank may not setoff its claim/judgment against any §303(i) liability it may have, I am unpersuaded by U.S. Bank's argument that the request for declaratory relief is a disguised request for an injunction.  The Debtors presently hold no judgment against which U.S. Bank might setoff its claim.  There is no potentially imminent action that needs to be restrained and certainly, no ongoing state court proceeding that implicates the Anti-Injunction Act.

If anything, the real question is whether there is a sufficient "case of actual controversy," see 28 U.S.C. §2201(a), that would warrant declaratory relief.  But, for two (2) reasons, I am satisfied that this constitutional and statutory requirement is satisfied in the circumstances presented here.

First, in light of the liberal standard for relief under §303(i)(1), it is exceedingly likely that the Debtors will obtain a money judgment against U.S. Bank.  In the §303(i)(1) litigation, the main controversy centers not on liability, but rather the scope and extent of U.S. Bank's liability.[28]  If the liability issues in the §303(i) litigation were less clear, the outcome of the "case

---

[28]      I focus on the §303(i)(1) claim, rather than the §303(i)(2) claim because judgment has already been entered against the Debtors on the latter claim (albeit a judgment that is not yet final and that
(continued...)

of actual controversy" would be less clear as well.

Second, U.S. Bank's has previously attempted (unsuccessfully) to exercise setoff rights against successful §303(i) claims arising out the failed involuntary bankruptcy petitions filed against the Debtors. See U.S. Bank, Nat'l Ass'n v. Rosenberg, 581 B.R. 424 (E.D. Pa. 2018), aff'd 741 F. App'x 887 (3d Cir. July 31, 2018).

Further, in this court, U.S. Bank maintains that the Rosenberg case "does not . . . bar setoff under the facts presented here." (U.S. Bank. Mem. at 33).

Consequently, there is ample reason to believe that U.S. Bank will continue to press its asserted setoff right and the parties' dispute on the issue continues to be hotly contested.

In these circumstances, I conclude that the request for declaratory relief regarding the setoff dispute is not barred as a disguised injunction and is an appropriate subject for declaratory relief. U.S. Bank's request for dismissal of this component of the First Claim will be denied.


### 3.  discussion re: judgment execution issue

The Debtors' request for a determination that U.S. Bank is prohibited from taking any action to interfere with the Debtors' prosecution of their §303(i) claims (such as executing on its Florida money judgment) raises different concerns.

I find it unnecessary to determine whether the claim is truly for declaratory relief or, instead, a defective request for injunctive relief. Taking the claim on its own terms – as a request for declaratory relief – I again exercise the discretion accorded the court under 28 U.S.C. §2201 – to decline to provide declaratory relief in favor of other available remedies.

_____

[28](...continued)
is still subject to modification on appeal if the U.S. Supreme Court grants the Debtors' cert. petition).

My decision here is influenced by the fact that the automatic stay, 11 U.S.C. §362(a), is in effect and precludes any action U.S. Bank might wish to take (such as execution on its judgment) that might impair or extinguish the Debtors' assets, the §303(i) claims. The Debtors have no present need for this relief.

Of course, circumstances may change. I foresee two (2) potential future scenarios in which the automatic stay will no longer be in effect. Both scenarios suggest that this dispute is better resolved later, if those situations arise, rather than in advance in this adversary proceeding.

In the first scenario, the automatic stay remains in effect to maintain the status quo, prevent execution against the §303(i) claims and preserve the claims' value while the Debtors seek to confirm a chapter 11 plan. The plan undoubtedly will provide for continued protection of any §303(i) claims that have not been finally decided, through a post-confirmation stay of some sort. To the extent that U.S. Bank maintains that a plan provision that restricts its judgment execution remedy violates its legal rights, it can raise its objections in the confirmation process. At that point, the court will have a larger, and in my view, better context to evaluate the parties' respective arguments.

In a second scenario, the Debtors are unable to confirm a plan and the bankruptcy cases eventually are dismissed, thereby terminating the automatic stay. See 11 U.S.C. §362(c). Presently, there is no pending execution against the Debtors' §303(i)(1) claim. At that point, if the §303(i)(1) claim remains pending in this court, U.S. Bank may or may not initiate additional judgment execution proceeding in the Fla. Trial Court. If it does so, at that time, the Debtors will be able to assert their rights in this court to any relief they may be entitled to prevent the

judgment execution.[29]  As for the §303(i)(2) claim, if it is still extant after a demise of the automatic stay,  the Debtors similarly can seek relief at that time in the appropriate court of competent jurisdiction.

For these reasons, I will dismiss the First Claims insofar as it seeks a determination U.S. Bank may not setoff its claim/judgment against any §303(i) liability it may have.  The dismissal is without prejudice.

## VI.  REQUEST FOR DISMISSAL OF SECOND CLAIM:
## JOINDER OF NECESSARY PARTY

The Debtors' Second Claim is framed a request for a "Determination of Extent, Priority and Validity of All Liens."  This largely tracks the text of Fed. R. Bankr. P. 7001(2).

U.S. Bank invokes Fed. R. Civ. P. 19 (incorporated by Fed. R. Bankr. P. 7019)[30] and

---

[29]    While I base my decision on the discretion accorded the court under 28 U.S.C. §2201, the analysis in the text could be characterized as a determination that presently, the parties' dispute regarding judgment execution is too remote to satisfy the statutory  "case of actual controversy" requirement. Either way, dismissal is appropriate.

[30]    Fed. R. Civ. P. 19(a) provides:

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(continued...)

asserts that other creditors in the bankruptcy case who claim an interest in the Debtors' §303(i)

claims (or their proceeds) should have been joined as parties in this adversary proceeding and

that the Debtors' failure to do so warrants dismissal pursuant to Fed. R. Civ. P. 12(b)(7).

If the Second Claim truly involved a request determine a dispute regarding the priority of

the asserted liens of U.S. Bank and other parties, U.S. Bank's argument might be meritorious.

The rights of other asserted lienholders would be affected directly in such a proceeding.

However, the Complaint is limited to a request that U.S. Bank's lien against §303(i) claims be

invalidated because "a wrongdoer who is liable under Section 303(i) . . .  is prohibited from

asserting a claim against or interest in the proceeds derived by its misconduct."  (Complaint ¶

126).

Consequently, the Debtors are correct in their contention that the other claimants are not

necessary parties.   The Complaint states no claims against them and their asserted interests in

the property of the estate  cannot be adversely affected by the Debtors' request for a

determination invalidating the position of U.S. Bank, a competing lienholder.  See Pittsburgh

Logistics Sys., Inc. v. C.R. England, Inc., 669 F. Supp. 2d 613, 618 (W.D. Pa. 2009); Strayer v.

Bare,  2008 WL 1924092, at *14 (M.D. Pa. Apr. 28, 2008); United States v. Payment Processing

Ctr., LLC, No. 2006 WL 2990392, at *4 (E.D. Pa. Oct. 18, 2006).

Further, as the Debtors observe, while there may be a dispute down the road regarding

lien priority if U.S. Bank's lien survives the Debtors' challenge, the mere possibility that similar

lien priority issues may arise in future litigation does not render a party "necessary" under Rule

---

[30](...continued)

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

19. <u>See</u> <u>Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.</u>, 11 F.3d 399, 413 (3d Cir. 1993).

The request for dismissal of the Second Claim pursuant to Fed. R. Civ. P. 12(b)(7) will

be denied.  In fact, the Second Claim has survived all of the grounds raised by U.S. Bank for its

dismissal.[31]


## VII.  CONCLUSION

For the reasons stated, U.S. Bank's Motion to Dismiss will be granted in part and denied

in part.  The Table below summarizes the disposition of the Motion.

| Claim | Disposition |
| --- | --- |
| **First Claim, ¶ 121(a)**: determination that U.S. Bank may not share in §303(i) proceeds | **MOTION GRANTED.  Claim dismissed without prejudice.** |
| **First Claim, ¶ 121(b)**: determination that U.S. Bank may not setoff its claim against any §303(i) liability | **MOTION DENIED**. |
| **First Claim, ¶ 121(c)**: determination that U.S. Bank may not interfere with Debtors' prosecution of their §303(i) claims | **MOTION GRANTED.  Claim dismissed without prejudice**. |
| **First Claim, ¶ 121(d)**: determination that U.S. Bank may not receive a distribution its claim against any §303(i) liability it may have[32] | **MOTION GRANTED  Claim dismissed without prejudice**. |

---

[31]     To be clear, I have not yet determined the ultimate merits of the claim, <u>i.e.</u>, whether 11 U.S.C. §303(i) ( perhaps supplemented by 11 U.S.C. §105(a)) authorizes a court to invalidate a lien otherwise validly obtained under applicable nonbankruptcy law.

[32]     Technically, Paragraph 121(d) of the Complaint also references a restriction on U.S. Bank's setoff rights, a subject also found in Paragraph 121(a). The dismissal of the Paragraph 121(d) component of the First Claim does not impact the survival of the Paragraph 121(a) component of the First Claim.

| | |
|---|---|
| **First Claim, ¶ 121(e)**: determination that in any chapter 11 plan, U.S. Bank must be separately classified from the claims of all other creditors, identified as junior in priority to all other classes of claims, and prohibited from sharing in any recovery from the Debtors' §303(i) claims, even if such recovery is sufficient to pay all the Debtors' other creditors in full. | **MOTION GRANTED.  Claim dismissed without prejudice**. |
| | |
| **Second Claim**: determination that any lien U.S. Bank hold on property of the bankruptcy estate is invalid. | **MOTION DENIED**. |
| | |
| **Third Claim**: equitable subordination of U.S. Bank's claim  below the rights of all other creditors | **MOTION GRANTED.  Claim dismissed**. |

In light of all of the time that has passed since these parties began their litigation against each other, it seems unlikely that the Debtors can plead any additional facts in an amended complaint that would permit the claims dismissed without prejudice to proceed.  However, based on the policy expressed in Alston v. Parker, 363 F.3d 229, 235 (3d Cir.2004)., and in abundance of caution, I will enter an order consistent with this Memorandum that provides the Debtors with an opportunity to file an amended complaint.

**Date:  February 22, 2021**

_____
**ERIC L. FRANK
U.S. BANKRUPTCY JUDGE**